FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEONNA U.,[1] | No. 1:20-cv-03223-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| | **ECF Nos. 17, 18** |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 18. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 17, and grants Defendant's motion, ECF No. 18.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

ORDER - 3

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 14, 2016 Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of November 1, 2011. Tr. 15, 127, 315-23. The application was denied initially, and on reconsideration. Tr. 158-66, 170-76. Plaintiff appeared before an administrative law judge (ALJ) on October 25, 2018, but the hearing was continued to obtain updated medical records and medical expert testimony. Tr. 43-79. A hearing scheduled for October 2019 was postponed when the scheduled medical expert was not available. *See* Tr. 15. Plaintiff appeared before a new administrative law judge on February 24, 2020. Tr. 80-126. On March 10, 2020, the ALJ denied Plaintiff's claim. Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 14, 2016. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: Gastrointestinal (GI) impairment(s) (including gastroparesis, recurrent hernias, diverticulitis, and/or inflammatory bowel disease), cardiac arrhythmia,

fibromyalgia, Addison's disease (adrenal insufficiency), sleep apnea, migraine headaches, affective disorder, and somatic symptom disorder.  Tr. 17-18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] cannot climb ladders, ropes or scaffolds.  She cannot work at unprotected heights or in proximity to hazards such as heavy machinery with dangerous moving parts.  She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  She can perform work in which concentrated exposure to loud noise, pulmonary irritants, or vibration is not present.  She requires work that is indoors for access to a bathroom within 200 feet.  Due to potential bathroom urgency, she is limited to work without direct public service and which does not require the substitution of another worker when leaving her workstation.  She can understand, remember and carry out simple, routine tasks and follow short, simple instructions.  She can perform work that requires little or no judgement, and can perform simple duties that can be learned on the job in a short period.  Within these parameters, [Plaintiff] can meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior, and can persist, focus, concentrate, and maintain an adequate pace in two-hour increments.

Tr. 20.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 26.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform,

ORDER - 7

such as office helper, housekeeper, and mailroom clerk. *Id.* Therefore, the ALJ

concluded Plaintiff was not under a disability, as defined in the Social Security

Act, from the date of the application through the date of the decision. Tr. 27.

On September 28, 2020, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income benefits under Title XVI of the Social Security

Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 17 at 1.

## DISCUSSION

**A. Plaintiff' Symptom Claims**

Plaintiff contends the ALJ improperly rejected Plaintiff's symptom

complaints. *Id.* at 4-16. An ALJ engages in a two-step analysis to determine

whether to discount a claimant's testimony regarding subjective symptoms. SSR

16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is

objective medical evidence of an underlying impairment which could reasonably

ORDER - 8

be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location,

ORDER - 9

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.  Here, the ALJ found that

Plaintiff's medically determinable impairments could reasonably be expected to

cause the alleged symptoms, but that Plaintiff's statements concerning the

intensity, persistence, and limiting effects of her symptoms were not entirely

consistent with the evidence.  Tr. 21.

### 1.  Inconsistent with Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the

medical evidence.  Tr. 20-23.  An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

ORDER - 10

857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d

676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant

factor, along with the medical source's information about the claimant's pain or

other symptoms, in determining the severity of a claimant's symptoms and their

disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Here, the ALJ found that while records show diagnoses of GI and other

impairments, her weight stabilized during the relevant period and exams were

often normal aside from abdominal tenderness.  Tr. 18, 21.  The ALJ explained

that while Plaintiff often demonstrated abdominal tenderness upon exam, physical

exams were often otherwise unremarkable, and she routinely appeared comfortable

with no rebound pain or abdominal guarding.  Tr. 21-23 (citing e.g., Tr. 530-31,

541-45, 1154-55, 1159-60, 1163-64, 1165-69, 1172-73, 1200-05, 1209-17, 1235-

43, 1298-1304, 1383-84, 1419-20, 1488).  Testing and imaging have shown some

abnormal findings, including delayed gastric emptying suggestive of gastroparesis,

fatty liver, inflammation and colitis, at times, along with mild diverticulitis; and

she had an infection with clostridium difficile colitis in 2016, which improved with

antibiotics.  *See, e.g.*, Tr. 556, 579-81, 585-86, 1285, 1287, 1356, 1358, 1472-73.

Plaintiff's primary care provider noted as early as 2016 that she "has suffered with

abdominal pain of unknown etiology since 2004" despite extensive workup over

ORDER - 11

the years; and records from 2017 show "inconclusive diagnoses for chronic nausea and abdominal pain."  Tr. 530-31, 1338.  In October 2017, GI specialist Dr. Lin noted a previous abdominal ultrasound and CT were negative, and "upper endoscopy by me was unremarkable, including biopsies."  Tr. 1195.

At an appointment with another GI specialist, Dr. Ko, in May 2018, Dr. Ko discussed Plaintiff's extensive history of treatment and workup, noting "multiple negative investigations" and indicating that Crohns's disease was not found on several colonoscopies.  Tr. 1461.  Upon physical exam, Dr. Ko observed Plaintiff appeared healthy, alert, and in no distress, and that her abdomen was soft, distended with mild diffuse tenderness (more prominent in the right upper quadrant), bowel sounds were normal, there were no masses or organomegaly, and she had a well healed ventral hernia incision; she indicated physical exam was otherwise normal.  Tr. 1460-61.  Dr. Ko diagnosed Plaintiff with gastroparesis at that time, noting "ideally [I] would like to manage her pain without use of chronic opiates," and she instructed Plaintiff to meet with a nutritionist for counseling regarding a gastroparesis diet, noting, "I suggested that would be the first step in her management."

In January 2020, Plaintiff met with Dr. Ko again.  Tr. 1472-75.  Upon physical exam, Dr. Ko observed that Plaintiff appeared healthy, alert, and in no distress, although she was occasionally tearful; her abdomen was soft, and she had

1  mild-moderate epigastric tenderness with a palpable fullness, no guarding or

2  rebound, bowel sounds were normal, and there were no masses or organomegaly.

3  Tr. 1473.  Dr. Ko noted that although Plaintiff might have a ventral hernia, this

4  "was not obvious to me on exam."  Tr. 1474.  Dr. Ko determined "she does have

5  documented gastroparesis, and I think some of her symptoms may be related to

6  poorly controlled gastroparesis."  Tr. 1473-74.  She again indicated she "would

7  like to try to optimize management of her gastroparesis with dietary counseling."

8  Tr. 1474.

9       As for Plaintiff's other impairments, the ALJ noted that while Plaintiff had a

10 constricted affect upon mental status exam at a consultative exam in May 2017, the

11 examiner also observed she was cooperative and her speech, thought process,

12 memory, and judgment were normal, and she demonstrated good persistence and

13 concentration.  Tr. 19 (citing Tr. 1114).  The ALJ also noted Plaintiff's reported

14 fibromyalgia and headache symptoms and diagnoses of migraines and

15 fibromyalgia, but found she had minimal treatment or complaints about these

16 impairments during the period at issue and there was no evidence of significant

17 limitations from them.  Tr. 23.

18      The Court must consider the ALJ's decision in the context of "the entire

19 record as a whole," and if the "evidence is susceptible to more than one rational

20 interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*,

1    528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).  Further,

2    where the ALJ's interpretation of the record is reasonable, as it is here, it should

3    not be second-guessed.  *Rollins*, 261 F.3d at 857.  The ALJ reasonably concluded

4    that the medical evidence of record did not support the level of impairment alleged

5    by Plaintiff during the period at issue.

6         *2.  Improvement/Controlled with Treatment*

7         The ALJ also discounted Plaintiff's symptom claims because records

8    document improvement.  Tr. 21.  The effectiveness of medication and treatment is

9    a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R.

10    416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

11    Cir. 2006) (recognizing that conditions effectively controlled with medication are

12    not disabling for purposes of determining eligibility for benefits) (internal citations

13    omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (A

14    favorable response to treatment can undermine a claimant's complaints of

15    debilitating pain or other severe limitations.).  Here, the ALJ noted Plaintiff's

16    report on more than on occasion that medication relieved her abdominal symptoms

17    and helped her maintain her weight.  Tr. 21 (citing Tr. 504; *see also* Tr. 486, 511,

18    1459).  While records show repeat ER visits and some admissions for her

19    symptoms, the ALJ noted there were often limited findings upon physical exam

20    and that Plaintiff typically received opiate injections during such ER visits; and

ORDER - 14

records show occasions where she was discharged after ER work-up was negative or inconclusive and her symptoms had resolved with hydration and IV opiate pain medication.  Tr. 22; *see, e.g.*, Tr. 1302-04, 1333.  In February 2018, a provider indicated Plaintiff should get a standing order for IV hydration so she would not have to go to the ER for vomiting.  Tr. 1141.

On this record, the ALJ reasonably interpreted the evidence and permissibly discounted Plaintiff's subjective complaints based on her history of controlled symptoms with medication and treatment.

### 3.  Failure to Follow Treatment Recommendations

The ALJ found that Plaintiff failed to follow treatment recommendations. Tr. 22.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ noted Plaintiff failed to follow treatment recommendations including instructions to decrease her use of opiates and to adhere to an appropriate diet.  Tr. 22.  The ALJ noted that in October 2017 a GI specialist told Plaintiff that her symptoms may be caused by narcotic bowel syndrome.  *Id.* (citing Tr. 1196). The specialist, Dr. Lin, advised her narcotic bowel syndrome would exacerbate abdominal pain, nausea, and vomiting, and noted that "slow gastric emptying may also be due to a narcotic effect."  Tr. 1196.  He advised her at that time to taper off

opioid pain medication, with detailed instructions for a taper and medication to ease the process. *Id.* The ALJ noted that Dr. Lin informed Plaintiff the taper/discontinuation of opioids was necessary to determine whether to proceed with treatment for her gastroparesis and/and to determine other possible causes of her complaints. Tr. 22 (citing Tr. 1196). The ALJ also noted Plaintiff was unable to undergo a consult for a gastric pacemaker in early 2018 because she did not wean herself from opiate medications. Tr. 22 (citing Tr. 1365-67). While her primary care provider continued to prescribe opiate pain medication for her abdominal pain/chronic pain syndrome, multiple providers have also noted opiates may exacerbate her abdominal symptoms and recommended she reduce or stop her use for diagnostic and/or symptom relief purposes. *See* Tr. 457-58, 1226, 1461, 1956-57.

The ALJ also noted that Plaintiff did not follow a gastroparesis diet as recommended by Dr. Ko in 2018 and 2020 and had not seen a nutritionist despite being referred by the GI specialist. Tr. 22 (citing 1458-61, 1482). As discussed *supra*, in May 2018, Dr. Ko noted Plaintiff was not following a gastroparesis diet and suggested that this would "be the first step in her management." Tr. 1461. Records from another provider in October 2017 show a gastric pacemaker was discussed but "she had not tried dietary maneuvers for gastroparesis and constipation." Tr. 1338. Records from July 2018 show her primary care provider

ORDER - 16

advised her to meet with a dietician to further evaluate abdominal discomfort at that time, as well.  Tr. 1128.  At the January 2020 consult, Dr. Ko indicated she again provided Plaintiff with education about gastroparesis including dietary changes and referred her to a nutritionist.  Tr. 1474-75.

Plaintiff contends that the ALJ's rejection of Plaintiff's testimony "because she did not stop taking opiates or follow a gastroparesis diet, as recommended by one doctor" is internally inconsistent, as the ALJ also found she had improved despite failure to follow such treatment; and the ALJ also did not point to any persuasive evidence that reducing her use of opiates or following a diet would have alleviated her symptoms to the point she could work.  ECF No. 17 at 5-6.  As discussed *supra*, however, multiple providers, including Plaintiff's PCP, indicated that Plaintiff's symptoms might be controlled with dietary changes; and more than one provider noted opiates were likely exacerbating and could be causing her GI symptoms.  *See, e.g.*, Tr. 457-58, 1128, 1226, 1338, 1461, 1956-57.  Plaintiff also contends she was following such a diet by the time of the February 2020 hearing.  ECF No. 17 at 9.  As of the January 2020 appointment with Dr. Ko, however, she had not made such changes or met with a nutritionist.  *See* Tr. 1472-75.  For the reasons discussed above the ALJ reasonably found she did not follow dietary and other treatment recommendations throughout the period at issue.  If the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

ORDER - 17

upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Further, where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857.

The ALJ reasonably found Plaintiff did not follow treatment recommendations during the period at issue, and this was a clear and convincing reason to discount Plaintiff's symptom reports.

### 4. *Activities of Daily Living*

The ALJ found Plaintiff's activities contradict her self-reporting of severe physical and psychological issues. Tr. 19, 24. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities

ORDER - 18

1  "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-

2  13.

3      Here, the ALJ noted Plaintiff took care of her son as a single parent,

4  including taking him to school and/or a bus stop on a daily basis and later assisting

5  in his homeschooling; and she has reported performing household chores, cleaning,

6  and shopping.  Tr. 19, 24 (citing Tr. 105-07, 111, 366-73, 382-89).  At the

7  consultative exam in May 2017, she reported she did housework including

8  sweeping, mopping, and vacuuming (although she noted her mother typically

9  assisted her).  Tr. 1114.  She reported she did dishes, weekly laundry, and prepared

10  meals daily; and she could take medication without assistance, shopped for

11  groceries and clothing monthly, used her phone, managed money, and drove.  *Id.*

12  She reported she watched five to six hours of television daily.  *Id.*

13      While Plaintiff offers a different interpretation of the evidence, the ALJ

14  reasonably found Plaintiff's activities of daily living are inconsistent with her

15  claims of disabling limitations.  This was a clear and convincing reason, when

16  combined with the other reasons offered, to discount Plaintiff's symptom reports.

17      The ALJ set forth clear and convincing reasons, supported by substantial

18  evidence, to reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand

19  on these grounds.

20

ORDER - 19

### B. Medical Opinion Evidence

Plaintiff contends the ALJ erred in relying on the nonexamining source opinions of Guillermo Rubio, M.D.; Gordon Hale, M.D.; and Jerry Seligman, M.D. ECF No. 17 at 16-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

In March 2017, Dr. Rubio, a reviewing physician, opined Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; she could stand and walk about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday; she could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. Tr. 135-37. Dr. Rubio explained her exertional and postural limitations were due to abdominal pain and tachycardia; and that "transient C. Difficile colitis should have cleared. Cause of chronic abdominal pain attributable to IBS" and that "gastroparesis [is] likely aggravated by opiate use." Tr. 136-37. In October 2017, Dr. Hale affirmed Dr. Rubio's opinion. Tr. 149-50.

At the hearing, Dr. Seligman opined that since the application date, Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently; she could

ORDER - 21

stand and walk six hours in an eight-hour workday and sit six hours in an eight-hour workday; she should never climb ropes, ladders, or scaffolds; she should avoid even moderate exposure to noise, fumes, odors, dusts, and gases; and she should avoid all exposure to hazards such as machinery and heights.  Tr. 98.  Upon questioning by the ALJ, Dr. Seligman clarified Plaintiff should avoid loud noises such as jackhammers and industrial noise, and that the noise imitations were due to headaches; he also explained the environmental limitations were due to sleep apnea.  *Id.*  He testified the limits to light work were supported by migraine headaches and also gastroparesis, as pain would affect the amount of weight she could lift occasionally or frequently.  Tr. 99.  He testified that based on his review of the records, and considering the effects of pain, gastroparesis, and migraines, he did not think she would miss more than one day of work a month on average.  Tr. 99-100.  The ALJ gave significant weight to the opinions of Dr. Rubio, Dr. Hale, and Dr. Seligman.  Tr. 24.  As these were nonexamining physicians, the ALJ must show the opinions are supported by other independent evidence in the record.  *See Andrews*, 53 F.3d at 1041.

Plaintiff contends the ALJ erred by accepting the opinions of Dr. Rubio and Dr. Hale because they did not review all of the evidence in the record.  ECF No. 17 at 16-17.  Plaintiff further contends that the ALJ erred by accepting the opinion of Dr. Seligman because his answers at the hearing were non-responsive and

ORDER - 22

1  inconsistent with medical evidence; and that because Dr. Seligman does not

2  possess the qualifications necessary in this case the ALJ therefore failed to develop

3  the record. *Id.* at 17-19. Defendant contends that the ALJ reasonably weighed the

4  opinions of Dr. Rubio, Dr. Hale, and Dr. Seligman, and that Plaintiff fails to show

5  the record is inadequate or ambiguous and the ALJ therefore had no duty to further

6  develop the record or consult a gastroenterologist. ECF No. 18 at 10-14.

7  Defendant also points out that the reviewing doctors' opinion are not contradicted

8  by opinions from treating or examining providers. *Id.* at 11-12.

9      The ALJ gave significant weight to the opinions of Dr. Rubio, Dr. Hale, and

10  Dr. Seligman. Tr. 24. "[T]he ALJ is responsible for translating and incorporating

11  clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807

12  F.3d 996, 1006 (9th Cir. 2015). Where evidence is subject to more than one

13  rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at

14  679. The Court will only disturb the ALJ's findings if they are not supported by

15  substantial evidence. *Hill*, 698 F.3d at 1158. Here, the ALJ explained that the

16  reviewing doctors' opinions were "consistent with the [Plaintiff's] previously

17  discussed examination findings, activities, and records documenting improvement

18  with treatment . . . while [Plaintiff] apparently disregarded other treatment

19  recommendations." Tr. 24. As this reasoning was found to be clear and

20  convincing and supported by substantial evidence in relation to Plaintiff's

ORDER - 23

symptom claims, discussed *supra*, the ALJ's reasoning is therefore also sufficient to show the reviewing doctor's opinions are supported by other independent evidence in the record.  The ALJ's explanation and interpretation of the reviewing physicians' opinions is therefore reasonable and supported by substantial evidence.

As for Plaintiff's objection to Dr. Seligman's testimony because he is not a gastroenterologist, Plaintiff has not shown that the ALJ was required to consult with a specialist.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  Here, Dr. Seligman testified he reviewed the record, noting the period at issue began a year prior to her application date, and he explained his opinion of her impairments and level of functioning, indicating none of her impairments met or equaled a listing and providing the limitations described *supra*. Tr.  96-100.  Upon questioning by Plaintiff's representative, Dr. Seligman explained based upon his review of the file, he "can't make a case for her missing work several times a month"; he supported his opinion by noting the lack of

consistent documentation in the record, including findings upon imaging and testing, along with Plaintiff's lack of compliance with a gastroparesis diet.  Tr. 101-03.  Dr. Seligman also explained his opinion was based upon his review of the record as a whole and that he has experience reviewing files and providing medical opinions for the Agency; and the ALJ reasonably credited his opinion.

The ALJ noted previous attempts by an earlier ALJ to procure a specialist for Plaintiff's hearing; she concluded, however, that Dr. Seligman had the necessary experience to review the medical file and provide an opinion is this case. *See* Tr. 15, 83, 85-87.  The ALJ explained that Plaintiff's hearing had already been continued on more than one occasion since 2018, the Agency has often been unable to procure specialists when she requests them in other cases, and she noted that there are other impairments at issue in the case aside from GI problems.  *Id.* The ALJ also questioned Dr. Seligman at the hearing, asking "is there anything in [Plaintiff's] records that you feel you are not – that you don't have the experience or understanding to address today in your opinions?"  Tr. 94.  Dr. Seligman testified he had the experience or understanding to address Plaintiff's functioning, and that while he specialized primarily in pediatrics, he also had past experience in general practice and internal medicine, including cases of gastrointestinal issues, and he had experience "performing these reviews for the Social Security Administration."  Tr. 93-96.  The ALJ reasonably determined Dr. Seligman was

ORDER - 25

"qualified to give probative expert testimony in this case" and "qualified to testify for purposes of the review of the file and giving [his] opinion on the file." Tr. 15, 96.

Dr. Rubio and Dr. Hale had the opportunity to review the record through the reconsideration level, and Dr. Seligman had the opportunity to review the record as a whole, including testing, imaging, and recommendations from multiple GI consults during the entire period at issue. There are no other medical opinions as to Plaintiff's level of physical functioning in the record. The ALJ reasonably gave substantial weight to the opinions of the reviewing physicians.

Plaintiff is not entitled to remand on these grounds.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 26

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 30, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 27